**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|    Plaintiff, | § | |
| | § | |
|       v. | § | **CRIMINAL NO. 6:16-86** |
| | § | |
| JOSE EDUARDO SALAS ANTUNA, | § | |
|    Defendant. | § | |

**MEMORANDUM OPINION & ORDER**

Jose Eduardo Salas Antuna ("Defendant") is charged with conspiracy to possess and possession with intent to distribute more than 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a), and 841(b)(1)(A). Now pending before the Court is Defendant's motion to suppress (D.E. 16), to which the United States has responded (D.E. 24). The Court held an evidentiary hearing on Defendant's motion on March 29, 2017, after which the Parties filed supplemental briefing (D.E. 29, 30).

**I. Background[1]**

Texas Department of Public Safety (DPS) Trooper Natee N. Wong ("Trooper Wong") testified that on October 14, 2016, he was on patrol in his marked patrol car on U.S. Highway 59 in Victoria County near the rest stop northeast of Victoria. He was stationary on a crossover watching traffic travel northbound and conducted a traffic stop on Defendant after observing him driving in the left lane for approximately one half mile without passing any vehicles, in violation of the Texas Transportation Code. When he pulled out behind Defendant, Defendant pulled over into the right lane. Defendant gripped the steering wheel hard with both hands, his elbows were locked, and he appeared to be driving in an uncomfortable and tense position.

---

1.  The following facts were elicited at the evidentiary hearing.

1

The entire interaction between Trooper Wong and Defendant was recorded on Trooper Wong's dash cam, including the alleged traffic violation. *See* Gov't Hrg. Ex. 1, D.E. 27-1. The video shows Trooper Wong approaching the passenger side of the car. He immediately tells Defendant that he was stopped because he was driving in the left hand lane without passing any vehicles, and he asks Defendant for his license. As Defendant hands Trooper Wong his Mexico driver's license, he says he only understands a little bit of English and that he is traveling to Houston to pick up his grandfather for a party in Monterrey, Mexico. Trooper Wong looks in the back seat and asks Defendant, "*Drogas*?" (drugs), to which Defendant responds, "*No*." Less than a minute into the stop, Trooper Wong asks Defendant to exit the vehicle and continues to ask him questions about his destination. Trooper Wong then points to the trunk and asks if there are *drogas* in the trunk; Defendant again says *no*. About two minutes into the stop, Trooper Wong says, "Can I look? Can I search?" and points to his eyes and then to the trunk. In response, Defendant opens the trunk. Trooper Wong motions to Defendant to stand on the grass as he begins to search the vehicle. Trooper Wong then closes the trunk and returns to his patrol car to conduct an EPIC (Electronic Privacy Information Center) computer search to check for border crossings and Defendant's driving and criminal history. Around four minutes into the stop, while waiting for the results of the computer check, Trooper Wong asks Defendant "*Puedo buscar*? Can I search?" and points to his eyes and then points to the vehicle.[2] Defendant responds, "*Si*" (yes). Trooper Wong again asks, "*Puedo buscar*?" and Defendant again says "*Si*." Trooper Wong searches the vehicle's trunk, undercarriage, and interior for several minutes. Around 14 minutes into the stop, Trooper Wong finds a bundle later determined to be crystal methamphetamine. His canine, Yaki, then performs a search and finds eight bottles containing liquid methamphetamine.

---

2. An EPIC search takes approximately 15 minutes to complete. Trooper Wong testified that, while the search was running, he used Google Translate on his cellphone to look up how to ask for consent to search in Spanish.

Defendant was arrested and transported to the Victoria County Jail, where he was interviewed by DPS Officer Kopacz and Victoria County Sheriff's Deputy Rigoberto Robles, whom Officer Kopacz asked to help translate Defendant's interview. Deputy Robles testified that he read Defendant his *Miranda* warnings verbatim from the card offered into evidence by the Government (Gov't Hrg. Ex. 4, D.E. 27-4); however, an audio recording of the interview showed this testimony was incorrect. The relevant portion of the interview concerning *Miranda* was translated into English as follows:

> Robles: Okay. You have the right to take off care (sic) and not make any statements in any way. Some statement that you make may be used against you in a - in trial. Some statement you make may be used as evidence against you in court. You have the right to have an attorney present to advise you before and during an examination (sic) – examination (sic). Do you understand what an examination (sic) is?
>
> Defendant: Yes, yes.
>
> R: If you can't employ an attorney, you have the right to have an attorney designated to advise you before and during an examination (sic). You have the right to have – to terminate the interview at caring (sic) moment. You knowing, intelligent and voluntarily valve (sic) your rights established (sic) in the foregoing warning (sic). Do you understand what I told you?
>
> D: Yes, sir.
>
> R: Okay. Are you going to talk? Are you going to talk to us?
>
> D: Yes.
>
> R: Okay.
>
> D: Yes.
>
> R: He agrees. He understands his rights.
>
> Kopacz: Is he going to waive his rights and talk to us about it?
>
> R: Yes, he says he'll waive his rights –
>
> K: Okay.

R: - and talk to us.

Interview Tr., Gov't Hrg. Ex. 3, D.E. 27-3. Defendant was not provided with a written copy of his *Miranda* warnings.

## II. Motion to Suppress

Defendant moves to suppress all evidence discovered as a result of the search and all statements he made following his arrest because he did not commit a traffic violation, did not authorize a search of his vehicle, and did not waive his *Miranda* rights.

## III. Analysis

### A. Was the stop justified at its inception?

Defendant was stopped for driving in the left lane without passing any vehicles. The Texas Court of Criminal Appeals has made clear:

> The Transportation Code certainly indicates that if there is a sign present that says the left lane is for passing only, then it is a traffic offense to travel in the left lane when not passing another vehicle. Section 544.004(a) states that an operator of a vehicle shall comply with an *applicable* official traffic control device such as a "left lane for passing only" sign. Without such a sign present within a reasonable distance of the traffic stop, there is no offense.

*Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013) (emphasis in original). Construing *Abney*, the Fifth Circuit has held that an officer does not have to have specific knowledge that a suspect passed a "left lane for passing only" sign; instead, the court must "determine, based on the statute, whether a sign is applicable *on the facts of each case*." *United States v. Castillo*, 804 F.3d 361, 366 (5th Cir. 2015) (quoting *Abney*, 394 S.W.3d at 549–50) (emphasis in *Castillo*). In *Castillo*, the court concluded the officer had reason to suspect Castillo was committing a traffic infraction where the officer first observed Castillo 5.3 miles from the closest sign, he observed Castillo for several minutes and allowed him an opportunity to change lanes, and Castillo advanced no credible alternative reason for driving in the left lane. *Id.* at 367.

Defendant claims there are no "left lane for passing only" signs governing the northbound main lanes and frontage roads on which he was driving. However, Trooper Wong testified there are a total of six "left lane passing only" signs located on northbound Highway 59, including a sign at mile marker 630. Had Defendant taken Highway 77 and Loop 463 to Highway 59, he would have passed two "left lane for passing only" signs, including the sign at mile marker 630. Regardless of his route, Defendant must have passed the sign at mile marker 630. Trooper Wong stopped Defendant near mile marker 628—just two miles past the sign—after observing Defendant's vehicle travel in the left lane for approximately one half mile without passing any other vehicles. Defendant's vehicle was captured on Trooper Wong's dash cam video, and Defendant received a ticket for the violation. Gov't Hrg. Ex. 10, D.E. 27-14.

Based on the evidence presented at the hearing, the Court finds there was probable cause to believe Defendant committed a traffic violation, and the stop was justified at its inception.

### B. Was the stop unlawfully prolonged?

Defendant next complains that, after Trooper Wong told him the reason for the stop, Trooper Wong began to question him about where he was headed and for what purpose. Then, without any valid justification, Trooper Wong stopped talking about the traffic offense and continued to detain Defendant to ask him whether he had any drugs, which unlawfully prolonged the stop, citing *Rodriguez v. United States*, 135 S.Ct. 1609, 1612 (2015) ("[A] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures.")

During a traffic stop, an officer may detain and question the driver while a computer check is being conducted. *United States v. Dortch*, 199 F.3d 193, 198 (5th Cir. 1999), *opinion corrected on other grounds*, 203 F.3d 883 (5th Cir. 2000). During that time, the officer is allowed to ask questions unrelated to the purpose of the stop, including questions related to the

purpose and itinerary of the driver's trip. *United States v. Lopez-Moreno*, 420 F.3d 420, 430–31 (5th Cir. 2005). The Fifth Circuit has also consistently held that "if the initial, routine questioning generates reasonable suspicion of other criminal activity, the stop may be lengthened to accommodate its new justification." *United States v. Machuca-Barrera*, 261 F.3d 425, 434 (5th Cir. 2001). "The correct analysis requires district courts to consider the facts and circumstances of each case, giving due regard to the experience and training of the law enforcement officers, to determine whether the actions taken by the officers, including the length of the detention, were reasonable under the circumstances." *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004). It is the government's burden to demonstrate that the detention it seeks to justify on the basis of reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative detention. *Florida v. Royer*, 460 U.S. 491, 500 (1983).

Officer Wong testified that he stopped, detained, and questioned Defendant based on the fact that: (1) he observed Defendant commit a traffic violation; (2) Defendant was traveling roughly 850 miles between Mexico and Houston, but he had no change of clothing or personal items with him in the vehicle to indicate traveling a long distance; and (3) Defendant's hands were shaking, his pulse was throbbing rapidly in his neck, and he exhibited nervous behavior once he exited the vehicle. Defendant counters that these facts are insufficient to support a reasonable suspicion of drug trafficking, citing *United States v. Santiago*, 310 F.3d 336 (5th Cir. 2002), and *United States v. Gordon*, 917 F. Supp. 485 (W.D. Tex. 1996). In *Santiago*, the Fifth Circuit held that it was unreasonable for an officer to continue to detain the defendant after his records check came back clean, and the extended detention violated the defendant's Fourth Amendment rights. *Santiago*, 310 F.3d at 342. That is because "[o]nce a computer check is completed and the officer either issues a citation or determines that no citation should be issued,

the detention should end and the driver should be free to leave." *Id.* at 341–42 (citing *Dortch*, 199 F.3d at 198). Similarly, the district court in *Gordon* held that officers had no reasonable suspicion to continue to detain the defendant and his vehicle after he signed a warning citation and refused to consent to a search of his vehicle. *Gordon*, 917 F. Supp. at 488. Here, Trooper Wong's questioning of Defendant and Defendant's consent to search the vehicle (twice) all occurred *before* the computer check was complete and *before* Trooper Wong issued Defendant a citation for driving in the left lane without passing. Neither *Santiago* nor *Gordon* supports Defendant's assertion that an officer must have reasonable suspicion of illegal activity in order to detain and question a driver before a traffic stop is complete.

Defendant further claims the stop was unlawfully extended because Trooper Wong searched the vehicle for several minutes without finding anything, and he admitted he didn't know what he was searching for. As the Court explained during the hearing, once valid consent is given, the length of the search is immaterial. Consent, like probable cause, does not dissipate with time. *See United States v. Berry*, 664 F. App'x 413, 420 (5th Cir. 2016) ("Although Berry argues that the length of the stop was unreasonable because the first forty-five minutes of the search did not recover evidence of wrongdoing, he fails to present any cases to support a finding that the length of a search alone would dissipate probable cause.") (citing *United States v. Hernandez*, 518 Fed. App'x 270 (5th Cir. 2013) (per curiam) ("the length of the search alone did not dissipate probable cause")).

### C. Was Defendant's consent valid?

Defendant complains that any consent to search was not communicated effectively and was involuntary due to the language barrier. According to Defendant, his opening of the trunk was not sufficient to signify consent because it was not a verbal response to Trooper Wong's question, "Can I look?" Moreover, Trooper Wong's question, "*Puedo buscar*?"—which

translates to "May I look for?"—was insufficient to relay that he was asking to search the vehicle and could have been construed as a command.

Regarding Defendant's claim that he did not verbally consent to the search of his trunk, the Fifth Circuit has recognized that "clear cooperation militates in favor of a finding of consent." *United States v. Cooper*, 43 F.3d 140, 148 (5th Cir. 1995) (noting that defendant stood up voluntarily prior to pat-down). The Fifth Circuit has also "recognized that consent 'can be implied from silence or failure to object if it follows a police officer's explicit or implicit request for consent.'" *United States v. Escamilla*, 852 F.3d 474, 484 (5th Cir. 2017) (defendant handed phone to officer in response to request to look through his phone) (quoting *United States v. Martinez*, 410 F. App'x at 763 (5th Cir. 2011)). Here, Defendant did more than remain silent—he actively complied with Trooper Wong's request by opening the trunk.

As for Defendant's complaint regarding Trooper Wong's *Puedo buscar*? request, the officer in *Rich* similarly asked for permission to "have a look in" the defendant's truck, which Rich argued was not the same as asking permission to search. *United States v. Rich*, 992 F.2d 502, 503 (5th Cir. 1993). The Fifth Circuit rejected this argument, holding:

> [I]t is not necessary for an officer to specifically use the term "search" when he requests consent from an individual to search a vehicle. We hold that any words, when viewed in context, that objectively communicate to a reasonable individual that the officer is requesting permission to examine the vehicle and its contents constitute a valid search request for Fourth Amendment purposes. Thus, . . we hold that [the trooper's] request to have "a look in" Rich's truck effectively communicated to Rich that [the trooper] was asking to search the vehicle.

*Id. See also U.S. v. McSween*, 53 F.3d 684, 687–88 (5th Cir. 1995) (upholding officer's search of defendant's trunk where defendant assented to officer's request to "look in" his vehicle). The *Rich C*ourt further noted that "Rich had observed [Trooper] Crais shining his flashlight not only into the tinted window but into the open driver's side window of the truck and studying the

truck's interior for at least thirty seconds; thus Crais had already 'seen inside' the truck and an objectively reasonable person would assume at this point that Crais was requesting permission to look further." *Rich*, 992 F.2d at 503. Here, Trooper Wong had already searched the trunk of Defendant's car when he asked Defendant, "*Puedo buscar*?"; thus, a reasonable person would assume that Trooper Wong was requesting permission to look further. *Id. See also United States v. Crain*, 33 F.3d 480, 484 (5th Cir. 1994) ("[A]n individual's consent to an officer's request to 'look inside' his vehicle is equivalent to general consent to search the vehicle and its contents.").

Defendant argues that Trooper Wong's question, "May I look for?" could nonetheless have been construed as a command, citing *United States v. Vasquez-Gutierrez*, 2015 WL 429735 (S.D. Tex. Feb. 2, 2015). There, the court found that a Border Patrol officer's use of the word *permitame* (permit me), while motioning the defendant to the secondary inspection area at the checkpoint, "was an instruction rather than a request for consent." *Id.* at *16. In doing so, however, the court explicitly recognized that "language such as *'may I,'* 'can I,' 'would you permit me,' or 'do you mind if I,' [ ] are all parts of expressions that have been approved as appropriate questions from law enforcement that support a finding of voluntary consent, even without the word, 'please.'" *Id.* (emphasis added) (collecting cases).

Finally, the Court notes that Google Translate does indicate that *Puedo buscar* is the proper Spanish translation for "May I search". *See https://translate.google.com/#auto/es/May I search* (last visited May 22, 2017). The Court interpreters stated at the hearing that this is not a legally precise translation; however, Trooper Wong relied on this translation in good faith and reasonably believed that Defendant was consenting to a search when he responded in the affirmative. Even if Defendant's consent was not valid, as he claims, the Court finds the methamphetamine and other evidence uncovered during the search are covered by the "good

faith" exception to the exclusionary rule, under which "evidence is not to be suppressed . . . where it is discovered by officers in the course of actions that are taken in good faith and in the reasonable, though mistaken, belief that they are authorized." *United States v. De Leon-Reyna*, 930 F.2d 396, 400 (5th Cir. 1991) (quoting *United States v. Williams*, 622 F.2d 830, 840 (5th Cir. 1980)). *See also Illinois v. Rodriguez*, 497 U.S. 177 (1990) (no Fourth Amendment violation where police made warrantless search of apartment based on reasonable belief they had valid consent to do so, when they did not).

For the reasons stated above, Defendant's motion to suppress all evidence uncovered as a result of the search of his vehicle is **DENIED**.

**D. Did Defendant knowingly and intelligently waive his *Miranda* rights?**

Defendant claims he did not knowingly and intelligently waive his *Miranda* rights because Officer Robles failed to correctly inform him of several rights. Defendant further argues that, during the audio recording, he does not explicitly state that he will waive his rights and talk to the authorities. Instead, Officer Robles incorrectly translated and added an additional phrase that Defendant did not state.

*Miranda* requires that, prior to a custodial interrogation, an accused person must be warned: (1) that he has a right to remain silent; (2) that any statement he makes can and will be used as evidence against him in court; (3) that he has a right to consult with counsel prior to questioning; (4) that he has a right to have counsel present during any questioning; and (5) that if he cannot afford an attorney a lawyer will be appointed to represent him. *Miranda v. Arizona*, 384 U.S. 436, 445–46 (1966). For a waiver of these rights to be voluntarily, knowingly, and intelligently made, the waiver must be: (1) voluntary and free from intimidation, coercion, or deception; and (2) made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

Defendant complains that Deputy Robles mispronounced or misused several key words when delivering his *Miranda* warnings. The record supports this claim. Specifically, Deputy Robles began by telling Defendant he had the right "to take off care" and not make any statements, using the Spanish *quitarse* (to take off an item of clothing) *cuidado* (precaution/care) instead of the correct *quedarse callado* (remain silent).[3] Similarly, while attempting to inform Defendant that he could exercise his rights at any time during the interview, Deputy Robles admonished Defendant that he had the right "to terminate the interview at caring moment." By using the word *cuidar* (to take care of) instead of *cualquier* (any), Defendant could have interpreted Deputy Robles' words to mean he should be careful when terminating the interview. Deputy Robles further stated that Defendant had a right to have an attorney present during an *interrogario*, which is not a word in the Spanish language.[4] While attempting to ask whether Defendant wished to renounce (*renuncia*) his rights established (*establecido*) in the warning (*advertencia*), Deputy Robles incorrectly used the words *renunca*, *estabiezados*, and *adverticia*, none of which are recognized in the Spanish language. As Defendant points out, *re* means "in relation to", while *nunca* means "never;" thus, Defendant could have understood Deputy Robles to have said that he would never lose those rights, not that he was renouncing them.

In a similar case involving the mistranslation of a defendant's *Miranda* warnings, a detective used the word *libre* to mean "free" or "without cost"; however, *libre* translates as "being available or at liberty to do something." *United States v. Botello-Rosales*, 728 F.3d 865, 868 (9th Cir. 2013). The Ninth Circuit concluded that the warning "failed to reasonably convey the government's obligation to appoint an attorney for an indigent suspect who wishes to consult

---

3. These translations were taken from the Court interpreters at the hearing as well as the SPANISH OXFORD LIVING DICTIONARY, *available at* https://es.oxforddictionaries.com/translate/spanish-english (last visited May 22, 2017).

4. Deputy Robles intended to say *interrogatorio* (questioning, examination, or interrogation).

one," and the defendant's statement was suppressed. *Id.* The court in *Carrasco-Calderon* similarly held that mistranslated Spanish *Miranda* warnings were constitutionally infirm where, among other failings, the detective mispronounced words and used a "non-word" that did not exist in Spanish, which could have confused the defendant and precluded his understanding of the warnings. *State v. Carrasco-Calderon*, 2008 WL 5377923, at *2, *4 (Ariz. Ct. App. 2008) (unreported). *See also, e.g.*, *United States v. Perez-Lopez*, 348 F.3d 839, 848–49 (9th Cir. 2003); *People v. Aguilar-Ramos*, 86 P.3d 397, 398–400 (Colo. 2004); *People v. Mejia-Mendoza*, 965 P.2d 777, 781 (Colo. 1998).

Finally, Defendant maintains that he never waived his *Miranda* rights. Deputy Robles asked Defendant, "Are you going to talk? Are you going to talk to us?" Special Agent Kopacz then asked whether Defendant would "waive his rights and talk to us." Deputy Robles never asked Defendant whether he would waive his rights, but instead replied, "Yes, he says he'll waive his rights." *See United States v. Higareda-Santa Cruz*, 826 F. Supp. 355, 360 (D. Or. 1993) ("Although Hagen testified that defendant answered, 'Yes,' to his question, 'Comprende,' defendant never expressly waived his rights.").

The Court finds that Deputy Robles failed to adequately apprise Defendant of his *Miranda* rights and failed to adequately confirm that Defendant willingly waived his rights contained in the *Miranda* warnings. "Because the warnings administered to Defendant did not reasonably convey his right[s] . . . as required by *Miranda*, his subsequent statements may not be admitted as evidence against him." *Botello-Rosales*, 728 F.3d at 868 (citing *Miranda*, 384 U.S. at 479); *see also Missouri v. Seibert*, 642 U.S. 600, 608 (2004) (reiterating that "the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored.")

For the reasons stated above, Defendant's motion to suppress any post-arrest statements is **GRANTED**.

**IV. Conclusion**

For the reasons stated herein, Defendant's Motion to Suppress (D.E. 16) is **GRANTED IN PART** and **DENIED IN PART**.

It is so **ORDERED** this 23rd day of May, 2017.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE